**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

**ALISSA S.F.,**

                      **Plaintiff,**                      **22-CV-114Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**

─────────────────────────────

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on March 21, 2019, at the age of 31, alleging disability beginning November 1, 2014, due to bipolar disorder, depression, attention deficit hyperactivity disorder ("ADHD"), social anxiety disorder, ruptured disc, disc degeneration, and hidradenitis suppurativa. Dkt. #6, p.115.

On April 29, 2021, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Edmond Calandra, at an administrative hearing conducted telephonically before Administrative Law Judge ("ALJ"), Mary Mattimore. Dkt. #6, pp.39-75. Plaintiff testified that she was a full-time caretaker for her three children, ages 12, 8, and 8. Dkt. #6, p.46. She has a GED and her drivers license. Dkt. #6, pp.46-47. She goes to the grocery store every couple of weeks, but otherwise only leaves the house for appointments. Dkt. #6, p.47. Her anxiety is so bad that sometimes she will drive to the grocery store and leave without going in. Dkt. #6, p.59. She maintains a relationship with her father, who she sees "maybe once a week," but has a "bad relationship" with most of her other family members and "can't really keep friends." Dkt. #6, p.49. Plaintiff testified that she "can't really stand up very long or sit down very long" without her back hurting. Dkt. #6, p.47. She sleeps on the couch because her bedroom is upstairs and she has a hard time with stairs. Dkt. #6, pp.47-48. Her laundry room is on the first floor, but her children carry the laundry baskets upstairs to the bedrooms. Dkt. #6, p.47.

Plaintiff testified that she wanted to work, but explained that when she starts to work, she gets triggered and becomes angry for absolutely no reason, which ruins her mood and work relationships, resulting in her either quitting or getting fired. Dkt. #6, pp.52-53. She testified that her anxiety would "come into play, causing her to feel like people were out to get her. Dkt. #6, p.53. Her back and hip pain also affects her mental health, putting her in "the worst mood ever." Dkt. #6, p.53. Plaintiff was waiting to see a new pain management doctor, because Dr. Wang tried to prescribe

psychiatric drugs, which she disagreed with. Dkt. #6, p.54. She currently takes Tylenol for her pain. Dkt. #6, p.55. She also experiences ocular migraines with a rainbow aura which can last between 20 minutes and 5 hours, requiring her to be in a dark, quiet room. Dkt. #6, p.61. With medication, the frequency has decreased from 20 occurrences per month to about three per month. Dkt. #6, p.62. She can stand or sit approximately 20 minutes before she needs to move around and alternate position, and needs to take a break after 10-15 minutes of using her right arm. Dkt. #6, pp.62-64.

Plaintiff had not worked or applied for any jobs since 2014, but had "recently applied for school." Dkt. #6, p.48. She explained that she was going to try to do something from home, because she has a hard time getting along with people. Dkt. #6, p.48. She further explained that her mood swings and physical pain affects her mood, which affects her ability to perform a job. Dkt. #6, pp.48-49. Plaintiff testified that her mental health diagnosis had recently been changed to borderline personality disorder and that her mood stabilizers were being discontinued because they weren't "doing anything" for her symptoms. Dkt. #6, p.45.

When asked to assume an individual with plaintiff's age, education and past work experience who was limited to light exertion but can only occasionally climb ramps, stairs, stoop, kneel, crouch and crawl; never climb ladders, ropes or scaffolds; frequently finger, handle and feel with her right dominant hand; can work in a moderate noise environment with no exposure to flashing or flickering lights or temperature extremes, who could perform simple routine work and make simple workplace

decisions, not at a production rate pace, with minimal changes in workplace practices and settings and occasional interaction with supervisors, co-workers and the public, with no tandem or team work or travel to unfamiliar places, the VE testified that plaintiff could perform her past work as an assembler and could also work as a maid, cafeteria worker or electrical assembler, each of which is a light exertion, unskilled position. Dkt. #6, pp.69-70. Plaintiff would not be able to perform the jobs of maid or cafeteria worker if she could not interact with the public, but could work as a small parts assembler. Dkt. #6, pp.70-71. None of the positions could be performed if plaintiff was limited to occasional reaching, handling and fingering or if she was unable to interact with co-workers. Dkt. #6, pp.71-72. The VE further opined that if such individual was off task more than 10% of the work day or absent more than 8 hours in a month, that individual would be deemed unemployable. Dkt. #6, p.73.

The ALJ rendered a decision that plaintiff was not disabled on June 2, 2021. Dkt. #6, pp.20-33. The Appeals Council denied review on December 23, 2021. Dkt. #6, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on February 7, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d

145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the

criteria of a disabling impairment, the Commissioner considers whether the claimant

has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past

relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past

relevant work, the burden of proof shifts to the Commissioner to demonstrate that she

could perform other jobs which exist in significant numbers in the national economy,

based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

           In the instant case, the ALJ made the following findings with regard to the

five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since the date of her application on March 21, 2019; (2) plaintiff's hidradenitis

suppurativa, bipolar disorder, major depressive disorder, ADHD, social anxiety disorder,

degenerative disc disease of the lumbar spine, alcohol polyneuropathy, chronic pain

syndrome, occipital neuralgia, obesity, sacroiliitis, carpal tunnel syndrome, and

migraines constitute severe impairments; (3) plaintiff's impairments did not meet or

equal any listed impairment; (4) plaintiff retained the RFC to perform light work with

occasional climbing of ramps and stairs, stooping, kneeling, crouching, crawling, no

climbing of ladders, ropes or scaffolds, frequent fingering, handling and feeling with her

dominant right hand, moderate noise, no exposure to flashing, flickering lights or

temperature extremes, and was limited to simple, routine work and workplace decisions

not at a production rate pace with  minimal changes in workplace processes and

settings and occasional interaction with the public, coworkers and supervisors without

tandem or team work or travel to unfamiliar places; and (5) plaintiff was capable of

performing her past work as an assembler, which is a light exertion, unskilled position,

or working as a maid, cafeteria worker, or electrical assembler, which are light exertion, unskilled positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.22-33.

Plaintiff argues that the ALJ selectively relied upon portions of the record to discredit plaintiff's severe mental health symptoms and improperly evaluated the opinion of MSW Morelli. Dkt. #8-1, pp.16-22. Plaintiff further argues that it was error for the ALJ to afford greater weight to the opinion of a consulting examiner over plaintiff's long-time mental health provider, particularly with respect to plaintiff's capacity to afford sufficient attention to her work. Dkt. #8-1, p.21. In any event, plaintiff argues that the ALJ failed to incorporate into her RFC the consulting examiner's opinion that plaintiff is moderately limited in her ability to sustain concentration and perform a task at a consistent pace. Dkt. #8-1, pp.22-26. Finally, plaintiff argues that the ALJ improperly relied upon her own lay interpretation of the medical evidence to formulate the physical RFC. Dkt. #8-1, pp.26-30. Because it is unclear how the ALJ determined the specific physical limitations imposed, plaintiff argues that remand is warranted. Dkt. #8-1, p.30.

The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence and that the ALJ is not required to identically track a medical source opinion. Dkt. #9-1, pp.8-15. The Commissioner argues that the ALJ's mental RFC incorporated the consulting examiner's moderate limitation by restricting plaintiff to unskilled work. Dkt. #9-1, pp.9-11. The Commissioner argues that the ALJ provided sufficient explanation for her analysis of the assessment of plaintiff's mental health

provider. Dkt. #9-1, pp.11-14. The Commissioner also argues that the ALJ properly assessed plaintiff's physical limitations. Dkt. #9-1, pp.15-18.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec'y*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021), *citing* 20 C.F.R. § 404.1520c(a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 404.1520c(b)(2) & (c).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2).

Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec'y*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec'y*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

Plaintiff's mental health records indicate that plaintiff was reporting symptoms of mania, including racing thoughts, irritability, and impulsive and risky behavior in April of 2019. Dkt. #6, p.562. A mental status exam dated April 18, 2019 indicates that plaintiff was cooperative, friendly and well groomed with a relaxed posture, good eye contact, appropriate, organized and logical thought content and irritable mood. Dkt. #6, p.560. Plaintiff was prescribed a mood stabilizer, but continued to report racing thoughts, irritability and engaging in risky behaviors the following month, prompting a change to her prescribed medication. Dkt. #6, p.569.

Plaintiff appeared for a consultative psychiatric examination with Gregory Fabiano, Ph.D., on June 1, 2019. Dkt. #6, pp.505-509. She had driven herself more than 25 miles to the appointment and denied any symptoms of depression other than some

feelings of hopelessness. Dkt. #6, p.505. Plaintiff reported that she was impulsive, unorganized and unable to focus. Dkt. #6, p.506. Upon examination, Dr. Fabiano observed a cooperative demeanor and adequate manner of relating, social skills, and overall presentation, with coherent and goal directed thought processes, full range and appropriate affect, and intact attention and concentration,  Dkt. #6, pp.506-507. Plaintiff was able to complete counting tasks, simple calculations and a serial 3s task counting down from 20, but was unable to complete a serial 7s task counting down from 100. Dkt. #6, p.507. Her recent and remote memory skills were intact, with immediate and delayed recall of 3 objects and recall of 5 digits forward and 3 digits backwards. Dkt. #6, p.507.

Dr. Fabiano opined that plaintiff appeared to have a mild limitation in her ability to understand, remember and apply simple directions and instructions; a moderate limitation in her ability to understand, remember and apply complex directions and instructions; a moderate limitation in her ability to sustain concentration and perform tasks at a consistent pace; a mild limitation in the ability to interact adequately with supervisors, co-workers and the public; and a mild limitation in her ability to regulate emotions, control behavior and maintain well being. Dkt. #6, p.508. Dr. Fabiano observed no evidence of limitation in plaintiff's ability to use reason and judgment to make work-related decisions, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, or have awareness of normal hazards and take appropriate precautions. Dkt. #6, p.508. The ALJ found Dr. Fabiano's opinion generally persuasive because the medical record generally supported no more than moderate limitations and because Dr. Fabiano was a specialist and was familiar with SSA regulations. Dkt. #6, p.31.

Upon consultative examination with Nikita Dave, M.D., on June 1, 2019, plaintiff was observed to have normal gait and stance and was able to walk on heels and toes without difficulty. Dkt. #6, p.511. Her squat was 3/4 down. Dkt. #6, p.511. She was able to rise from a chair without difficulty and did not require assistance to change or get on and off the examination table. Dkt. #6, p.511. Her cervical spine showed full flexion, extension, lateral flexion, and full rotary movement bilaterally. Dkt. #6, p.512. Her lumbar spine showed full extension and forward flexion 30 degrees; lateral flexion 10 degrees; rotation right 15 degrees and left 25 degrees. Dkt. #6, p.512. Tenderness was noted midline L5-S1 and right L5-S1 paramedian area. Dkt. #6, p.512. Straight leg raising was negative bilaterally. Dkt. #6, p.512. She demonstrated full range of motion of shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. Dkt. #6, p.512. Strength was 5/5 in both the upper and lower extremities. Dkt. #6, p.512. Hand and finger dexterity was intact, with 5/5 grip strength bilaterally. Dkt. #6, p.512. Dr. Dave opined that there may be moderate limitations for lifting and carrying, particularly with heavy objects and mild to moderate limitations for repetitive bending forward. Dkt. #6, p.513. The ALJ found Dr. Dave's opinion to be vague, noting it did not quantify the plaintiff's limitations in terms of weight and duration restrictions, but determined that his opinion is "not entirely inconsistent with a residual functional capacity of less than light exertion." Dkt. #6, p.31.

Plaintiff's mental health records indicate that on June 14, 2019, plaintiff's mood was observed to be euthymic rather than irritable. Dkt. #6, p.574.

On June 18, 2019, state agency decision maker M. Vasquez Gonzalez, M.D., reviewed the evidence of record and determined that plaintiff retained the capacity to occasionally lift and carry up to 20 pounds; frequently lift and carry up to 10 pounds; stand and walk about 6 hours in an 8-hour day; sit for about 6 hours in an 8-hour day; and occasionally climb ramps, stairs, ladders, ropes, scaffolds, balance, stoop, kneel, crouch, and crawl. Dkt. #6, p.123. The ALJ determined that the opinion of Dr. Vasquez Gonzalez was persuasive and that the physical examinations in the record supported a restriction to light exertion. Dkt. #6, p.30.

On September 13, 2019, Dr. Wang recommended a prescription for mood stabilization, in addition to her anti-manic medications, to address plaintiff's depression, anxiety and chronic pain. Dkt. #7, p.268.

On October 25, 2019, Dr. Wang reported that plaintiff had experienced improvement with her mood and pain. Dtk. #7, p.264. He observed that her pain seemed like neuropathy, with diffuse tenderness over the back and neck paraspinal muscles. Dtk. #7, p.264.

Although on November 7, 2019, plaintiff's mood was observed to be depressed (Dkt. #6, p.595), plaintiff denied symptoms of anxiety or depression to her gastroenterologist on  December 10, 2019. Dkt. #7, p.110.

On November 22, 2019, Dr. Wang observed diffuse pain with tenderness over plaintiff's back and neck paraspinal muscles, with negative straight leg raising. Dkt. #7, p.260. Dr. Wang increased plaintiff's selective serotonin reuptake inhibitor ("SSRI") "to benefit neurogenic pain control and mood stabilization" and encouraged plaintiff to "ambulate in the community routinely. Dkt. #7, pp.260-261.

On December 10, 2019, plaintiff's gastroenterologist noted upon examination that plaintiff walked with a normal gait and station and demonstrated intact motor strength and normal muscle tone bilaterally. Dkt. #7, p.110. Her mood and affect were noted to be normal. Dkt. #7, p.110.

On December 27, 2019, plaintiff reported improved mood and no significant anxiety. Dkt. #7, p.257. Dr. Wang encouraged plaintiff to start work-related exercise and try to return to the work force. Dkt. #7, p.259.

On January 9, 2020, plaintiff's mental status exam indicated that plaintiff's mood was euthymic, with a notation that her "[m]ood has been relatively stable." Dkt. #6, pp.602 & 604. On February 19, 2020, plaintiff's score on the PHQ-9 was 6, with a score of ten or greater suggesting moderate depression. Dkt. #7, p.23.

On February 25, 2020, plaintiff reported that her mood was stable. Dkt. #7, p.255. Dr. Wang observed diffuse tenderness over the back and neck paraspinal muscles. Dkt. 7, p.255. Dr. Wang encouraged plaintiff to see the psychiatrist for her

anxiety and mood stabilization, explaining that her mood disorder was a factor for pain exacerbation. Dkt. #7, p.255. Plaintiff reported that her mood was stable and her pain was improving. Dkt. #7, p.255.

On March 25, 2020, plaintiff informed Dr. Wang that her pain was improving and "also reported better mood." Dkt. #7, p.252. Plaintiff "reported feeling better than before," noting "the same pattern of pain, but with less intensity." Dkt. #7, p.252.

Plaintiff denied symptoms of anxiety or depression to her gastro-enterologist on April 3, 2020. Dkt. #7, p.107.

Plaintiff's mental status exam on April 9, 2020 and July 2, 2020 indicated an euthymic mood, with a notation that plaintiff reported her "mood has been good but there [were] situational things going on at home" and that she was "[s]truggling to motivate herself to accomplish goals." Dkt. #6, pp.609, 616 & 618. Plaintiff reported that she was frustrated with her focus, explaining she was easily distracted and unable to remain on tasks. Dkt. #6, p.618.

On July 30, 2020, plaintiff reported that she was not feeling depressed. Dkt. #7, p.250. Dr. Wang observed less diffuse tenderness over the neck, mid and low back spinal muscles. Dkt. #7, p.250. Dr. Wang noted that plaintiff's pain control was improving and discussed plaintiff's capacity for work. Dkt. #7, p.250. Dr. Wang opined

that plaintiff "is not totally disabled physically" and encouraged her to start part time work at first, increasing the work load as tolerated, depending upon the opinion of her psychiatrist given that plaintiff's "history of mood disorder might interfere with her work capability also." Dkt. #7, p.250.

Plaintiff reported her mood as "good" on August 27, 2020 and was observed on mental status exam to have an euthymic mood. Dkt. #7, p.4.

An MRI of plaintiff's lumbar spine on September 4, 2020,[1] revealed a "bright T2 signal in the annulus consistent with an acute tear of the annular fibers at L2-3" and a mild broad-based disc protrusion at L3-4; L4-5; L5-S1. Dkt. #7, p.422.

On September 30, 2020, Michael Stoffman, M.D., reviewed plaintiff's MRI with plaintiff and described it as "fairly unremarkable," opining that he did "not believe that this MRI explains this patient's symptoms." Dkt. #7, p.146. Upon examination, Dr. Stoffman observed normal range of motion of the neck; 25% reduction in the range of motion of the lumbar spine; no paraspinal muscle tenderness; negative straight leg raise; normal gait and station; positive Faber test bilaterally; and painful rotation of the hips bilaterally. Dkt. #7, p.146. Dr. Stoffman recommended a rheumatology examination to investigate the possibility of inflammatory arthritis "as her physical exam findings are difficult to reconcile with her history and imaging." Dkt. #7, p.145.

---

[1] An MRI of plaintiff's lumbar spine on September 21, 2018, prior to plaintiff's application for SSI, revealed multilevel degenerative disc changes at L5/S1 and L3/4 (bulges ), and a disc protrusion at L4/5. Dkt. #6, p.378.

On October 2, 2020, plaintiff reported that she was not feeling depressed. Dkt. #7, p.248. Dr. Wang discussed plaintiff's working capability and work related issues, noting that plaintiff was "not totally disabled physically" and encouraging plaintiff "to consider to start part time work, at first and increase the work loading as tolerate[d]." Dkt. #7, p.250. Dr. Wang noted that plaintiff should consider the opinion of her psychiatrist, as plaintiff's "history of mood disorder might interfere with her work capability." Dkt. #7, p.250.

On October 19, 2020, plaintiff's score on the PHQ-9 was 9, with a score of 10 or greater suggesting moderate depression. Dkt. #6, p.549. Treatment notes indicate that plaintiff's mood was anxious and that she sat with her legs shaking and moving around in her seat, but she had good eye contact and appropriate thought process. Dkt. #6, p.552. MSW Morelli opined that plaintiff "would laugh in session [-] it appeared to cover her feelings up so that she appears to be doing well." Dkt. #6, p.552. Plaintiff reported that going "out socially tends to increase her anxiety causing panic." Dkt. #6, p.555.

Plaintiff's mental status exam noted a depressed mood on October 28, 2020, with plaintiff explaining that there was a lot going on with her children being home-schooled and her chronic pain and that although she was depressed and had no motivation, she had to keep going for herself and her kids. Dkt. #7, pp.10 &12. Plaintiff's mental heath provider noted that plaintiff's depression was intermittent and situational and that plaintiff feels and copes much better when she does not have excessive

stressors or frustrations. Dkt. #7, p.12. Plaintiff reported that her medication for ADHD

was "helpful in maintaining her focus and ability to complete tasks." Dkt. #7, p.13.

On November 12, 2020, plaintiff's mood was reported to be euthymic. Dkt.

#7, p.390. She reported that her depression was 5/10, explaining that it was situational

because it was stressful with her children being remote. Dkt. #7, p.392. Plaintiff

reported that her anxiety was an 8/10, noting that she was "unsure what is causing her

to feel this anxious all the time.". Dkt. #7, p.392. Plaintiff was prescribed anti-anxiety

medication. Dkt. #7, p.392.

On November 16, 2020, Kathy Morelli, M.S.W., completed a treating

medical source statement, identifying plaintiff's diagnoses as bipolar disorder with most

recent episode presenting as moderate depression; ADHD presenting as predominately

inattentive; and anxiety disorder exhibiting as social phobia. Dkt. #6, p.210. MSW

Morelli opined that plaintiff had a moderate limitation with respect to understanding,

remembering or applying information and a marked limitation interacting with others and

concentrating, persisting or maintaining pace. Dkt. #7, p.215. MSW Morelli further

opined that plaintiff would be off-task more than 30% of an 8-hour work day and would

be absent from work more than four days per month because plaintiff "tends to struggle

with her mood and getting motivated and up and going for the day." Dkt. #7, pp.213-

214. MSW Morelli further explained that plaintiff has "a tendency when talking to have a

loss of words when talking to someone in authority and has shown to be aggressive

when spoken to by someone in authority." Dkt. #7, p.214. Overall, MSW Morelli

explained that plaintiff's "mood can fluctuate, she could struggle getting out of bed and be [sic] functional for work, she can get angry at the drop of a hat or for no reason" and that she "sometimes has issues staying on topic and struggles with crowds of 2 or more people." Dkt. #7, p.210. MSW Morelli opined that plaintiff could not sustain full-time work because "following through with instruction has been difficult for [plaintiff], being around others is emotionally tough for [plaintiff]." Dkt. #7, p.210. MSW Morelli opined that plaintiff's limitations in interacting appropriately with the general public and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes would preclude performance between 11% and 20% of an 8-hour workday. Dkt. #7, p.213.

The ALJ determined that MSW Morelli's opinion was not persuasive because it was not consistent with the totality of the medical record, noting that mental status examinations and consultative examination were generally unremarkable, indicating normal mood, affect, and intact attention, concentration and memory, with plaintiff appearing cooperative, friendly and pleasant during most therapy sessions. Dkt. #6, p.30. The ALJ also noted that MSW Morelli recorded plaintiff's score on a depression evaluation as correlating to less than moderate depression. Dkt. #6, p.30.

On December 10, 2020, plaintiff's mood was observed to be anxious. Dkt. #7, p.398. She reported that her medication was helping her anxiety symptoms, which she attributed to unresolved medical issues. Dkt. #7, p.400.

On January 8, 2021, plaintiff's score on the PHQ-9 was 6, with a score of 10 or greater suggesting moderate depression. Dkt.#7, p.363.

On February 1, 2021, plaintiff's mental status exam indicated euthymic mood. Dkt. #7, p.406. Plaintiff reported that she was doing well overall and was "getting stuff done." Dkt. #7, p.408. She reported that she wanted to "go back to school for business" and that she was "trying to engage with more groups," which "she enjoys attending." Dkt. #7, p.408.

As the foregoing recitation of the evidence of record demonstrates, the ALJ's assessment that MSW Morelli's opinion was inconsistent with the totality of the plaintiff's mental health treatment record is supported by substantial evidence. Although plaintiff experienced symptoms of depression and anxiety, the ALJ sufficiently explained his determination that plaintiff's treatment records and the opinion of the consultative examination do not support more than moderate limitations in plaintiff's capacity to understand, remember and apply information; interact with others; or concentrate, persist and maintain pace. Contrary to plaintiff's argument, restricting a plaintiff to simple, routine work at a non-production pace with only occasional contract with others is sufficient to account for moderate limitations in concentration, persistence and pace. *Pichardo v. Comm'r of Soc. Sec*., 21-CV-6873, 2023 WL 2596970, at *18 (S.D.N.Y. Mar. 22, 2023); *See Jacob K. v. Comm'r of Soc. Sec*., 20-CV-825, 2021 WL 4324379, at *3 (W.D.N.Y. Sept. 23, 2021) (noting there is significant case law indicating that an ALJ's restriction to simple, routine tasks accounts for limitations performing

activities within a schedule and maintaining regular attendance). In sum, the ALJ

properly assessed the medical opinions and evidence of record to determine that

plaintiff was capable of performing substantial gainful employment despite her mental

impairment.

                With respect to the physical RFC, the ALJ considered the opinion and

medical records from Dr. Wang, as well as the opinion and consultative examination by

Dr. Dave, and the opinion of the state agency decision maker, Dr. Vasquez Gonzalez,

and then explained:

> in spite of the [plaintiff's] multiple unremarkable physical
> evaluations, taking into account the combined effect of her
> physical impairments and considering her subjective
> allegations along with a history [of] back and hip pain, the
> undersigned has limited the [plaintiff] to performing no more
> than light work. Particularly, based on the cumulative effects
> of the [plaintiff's] impairments, she [is limited] to ocasionally
> climb[ing] ramps, stairs, stoop[ing], kneel[ing], crouch[ing],
> crawl[ing]; and never climb[ing] ladders[,] ropes, [or]
> scaffolds. The [plaintiff has only mild to moderate carpal
> tunnel symdrome and 5/5 grip strength, and this limits her to
> frequently finger[,] handle[,] and feel with her right dominant
> hand. Due to [plainitff's] history of headaches, she is limited
> to a moderate noise level . . . as well as no exposure to
> flashing, flickering lights or temperature extremes.

Dkt. #6, p.31. It is well settled that an ALJ does not commit reversible error where, as

here, he gives a plaintiff the benefit of the doubt and assesses limitations more severe

than those supported by the medical evidence of record based on the plaintiff's

subjective complaints." *Jessica Lynn J. v. Comm'r of Soc. Sec*., 645 F. Supp.3d 128,

135-136 (W.D.N.Y. 2022); *Lesanti v. Comm'r of Soc. Sec*., 436 F. Supp.3d 639, 649

(W.D.N.Y. 2020) (internal quotation omitted) ("remand is generally not warranted where

the ALJ's RFC finding is more restrictive than the opinions set forth in the medical opinions of record.").

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #9), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:      Buffalo, New York**
**March 31, 2025**

　　　　　　　　　　　　**s/ H. Kenneth Schroeder, Jr.**
　　　　　　　　　　　　**H. KENNETH SCHROEDER, JR.**
　　　　　　　　　　　　**United States Magistrate Judge**